DAVID M. REEDER, ESQ. (California State Bar No. 133150)
REEDER LAW CORPORATION
1880 CENTURY PARK EAST, SUITE 1200
LOS ANGELES, CA 90067
PHONE (310) 557-8911
FAX    (310) 557-0380
Email:  david@reederlaw.com

Attorneys for Watersong Apartments, L.P.,
Debtor-in-Possession and Plan Proponent

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>WATERSONG APARTMENTS, L.P.<br><br>a Delaware Limited Partnership<br><br>Debtor-in-Possession. | Case No.:  11-05632-LA11<br><br>[Chapter 11]<br><br>**DISCLOSURE STATEMENT DESCRIBING  DEBTOR-IN-POSSESSION'S ORIGINAL PLAN OF REORGANIZATION** |

# TABLE OF CONTENTS

**I.    INTRODUCTION** _____ **5**

    A.    Purpose of This Document _____ 5

    B.    Deadlines for Voting and Objecting; Date of Plan

        1.    Time and Place of the Confirmation
Hearing _____ 6

        2.    Deadline for Voting For or Against the
Plan _____ 7

        3.    Deadline for Objecting to the Confirmation
of the Plan _____ 7

        4.    Identity of Person to Contact for More
Information Regarding the Plan _____ 7

    C.    Disclaimer _____ 7


**II.    BACKGROUND** _____ **8**

    A.    Description and History of the Debtor's Business _____ 8

    B.    Principals/Affiliates of Debtor's Business _____ 8

    C.    Management of the Debtor Before and After the Bankruptcy _____ 8

    D.    Events Leading to Chapter 11 Filing _____ 8

    E.    Significant Events During the Bankruptcy Case _____ 8

        1.    Bankruptcy Proceedings _____ 9

        2.    Other Legal Proceedings _____ 11

        3.    Actual and Projected Recovery of
Preferential or Fraudulent Transfers _____ 11

        4.    Procedures Implemented to Resolve Financial
Problems _____ 11

        5.    Current and Historical Financial Conditions _____ 11


**III.    SUMMARY OF THE PLAN OF REORGANIZATION** _____ **12**

A.      What Creditors and Interest Holders Will Receive Under the Proposed Plan_____12

B.      Unclassified Claims_____12

    1.      Administrative Expenses_____12

    2.      Priority Tax Claims_____14

C.      Classified Claims and Interests_____14

    1.      Class -1 Priority Tax Claims_____14

    2.      Classes of Secured Claims_____16

    3.      Classes of Priority Unsecured Claims_____19

    4.      Classes of General Unsecured Claims_____19

    5.      Class(es) of Interest Holders_____21

D.      Means of Effectuating the Plan_____21

    1.      Funding for the Plan_____21

    2.      Post-Confirmation Management_____21

    3.      Disbursing Agent_____21

E.      Risk Factors_____21

F.      Other Provisions of the Plan_____22

    1.      Executory Contracts and Unexpired Leases_____22

        a.      Assumptions_____22

        b.      Rejections_____22

    2.      Changes in Rates Subject to Regulatory Approval_____22

    3.      Retention of Jurisdiction_____22

G.      Tax Consequences of Plan_____22

IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES_____23

A.      Who May Vote or Object_____23

    1.      Who May Object to Confirmation of the Plan_____23

    2.      Who May Vote to Accept/Reject the Plan_____23

        a.      What is an Allowed Claim/Interest_____23

        b.      What Is an Impaired Claim/Interest_____24

3.    Who is <u>Not</u> Entitled to Vote _____ 24

4.    Who Can Vote in More Than One Class _____ 25

5.    Votes Necessary to Confirm the Plan _____ 25

6.    Votes Necessary for a Class to Accept the Plan _____ 25

7.    Treatment of Nonaccepting Classes _____ 25

8.    Request for Confirmation Despite Nonacceptance

      by Impaired Class(es) _____ 26

B.    Liquidation Analysis _____ 26

C.    Feasibility _____ 30

**V.    EFFECTS OF CONFIRMATION OF PLAN** _____ **34**

A.    Discharge _____ 34

B.    Revesting of Property in the Debtor _____ 34

C.    Modification of Plan _____ 34

D.    Post-Confirmation Status Report _____ 34

E.    Post-Confirmation Conversion/Dismissal _____ 35

F.    Final Decree _____ 35

# I.

## INTRODUCTION

Watersong Apartments, L.P.  ("Watersong", the "Debtor-in-Possession" or the "Plan Proponent") are the  in a chapter 11 bankruptcy case.  On April 2, 2011, Watersong commenced a bankruptcy case by filing a voluntary  chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 et seq.  Chapter 11 allows the Debtor-in-Possession to propose a plan of reorganization ("Plan").  The Plan may provide for the Debtor-in-Possession  to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  Watersong is the party proposing the Plan sent to you in the same envelope as this document.  THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This is an "earn-out" plan.  In other words, the Plan Proponent seeks to accomplish payments under the Plan by making periodic payments or lump sum payments, depending on the class, to the holders of allowed claims from 1) funds available on the Effective Date;  2) post Plan confirmation earnings of the Plan Proponents.  The Effective Date of the proposed Plan is 11 days after the entry of an order by the Bankruptcy Court confirming the Plan.

**A.    Purpose of This Document**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

**(1)    WHO CAN VOTE OR OBJECT,**

**(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

**(3)     THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

**(4)     WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

**(5)     WHAT IS THE EFFECT OF CONFIRMATION, AND**

**(6)     WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The Bankruptcy Court (the "Court") has approved, or will deal with such approval as part of the part of the Plan confirmation process,  this document regarding it being an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

**B.     Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1.     Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to  confirm the Plan will take place on _____, 2011.  ,  at ____ _..m.  in Department 2 of the United States

Bankruptcy Court for the Southern District of California located at 325 West F Street, San Diego, California 92101.

**2.      Deadline For Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to:

>Reeder Law Corporation
>Attn: David M. Reeder, Esq.
>1880 Century Park East,
>Suite 1200
>Los Angeles, CA 90067

Your ballot must be received by _____, 2011, or it will not be counted.

**3.      Deadline For Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon counsel for the Plan Proponent, at the address setout above, by _____, 2011.

**4.      Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact attorneys for the Plan Proponent:

>Reeder Law Corporation
>Attn: David M. Reeder, Esq.
>1880 Century Park East,
>Suite 1200
>Los Angeles, CA 90067
>Telephone: (310) 557-8911
>Telecopier: (310) 557-0380
>david@reederlaw.com

**C.      Disclaimer**

The financial data relied upon in formulating the Plan is based on materials provided by the Plan Proponent.  Further, the information contained in this Disclosure Statement is provided by the Plan Proponent. The Plan Proponent represents that everything stated in the Disclosure Statement is true to the best of its knowledge.  The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## II.

## BACKGROUND

### A.      Description of the Proponent and Its Business Operations

The Debtor-in-Possession is a Delaware limited partnership.  The Debtor-in-Possession owns and operates the Watersong Condominiums, 250 separately registered, titled and separately saleable condominium units with separate addresses, including 14645 Las Flores Drive, Dallas, Texas 75254, with separate parcel numbers and legal descriptions.   The Watersong Condominiums have been rented to tenants since the downturn in the Dallas real estate market.  Prior to said downturn, the Watersong Condominiums were being marketed as condominiums, resulting in sales of some of the units.

### B.      Principals/Affiliates of Debtor's Business

Barry S. Nussbaum, an individual ("Mr. Nussbaum"), is the manager of the general partner of the general partner of the Debtor-in-Possession.  Specifically, Mr. Nussbaum is the manager, BNC Investments LLC, general partner of BNC Watersong, L.P., general partner of Watersong Apartments, L.P.  Barry S. Nussbaum Company, Inc. dba BNC Real Estate ("Nussbaum, Inc.") is the property manager/asset manager of the Watersong Condominiums under a property management agreement entered into with Watersong in 2001.  Mr. Nussbaum owns 100% of the stock of Nussbaum, Inc.

Susan Stubblefield is the C.F.O. of Nussbaum, Inc.  Ms. Stubblefield has the greatest amount of day to day responsibility regarding the operations of Watersong.

### C.      Events Leading to Chapter 11 Filing.

The events leading to the filing of the chapter 11 case by Watersong began when its lender, LaJolla Bank, FSB ("LaJolla"), which understood Watersong's operations and was supportive of Watersong's business plan, was seized by the Federal Deposit Insurance Corporation. This resulted in the loan being sold as part of a package to One West Bank, FSB

8

("One West").  As a part of One West's acquisition of the assets of LaJolla, the F.D.I.C. and One West entered into a Loss Share Arrangement (the "Loss Share Arrangement").  The Loss Share Agreement makes the Federal Deposit Insurance Corporation a guarantor for any "loss" incurred by One West regarding the loan to Watersong. Thus, the F.D.I.C. stands ready to reimburse One West for all or part of its stated loss regarding its claim against Watersong in this case.

In keeping with its hostility to the Debtor-in-Possession, One West moved for the appointment of a receiver in the Dallas District Court.  The Court authorized the appointment of a receiver, but limited the receiver's role to that of an "accounting receiver", wherein Watersong would collect rents, show and rent out vacant condominiums, supervise repairs and maintenance, and present approved vendor invoices to the receiver for payment.  The receiver never went into possession of the Watersong Condominiums.

One West also scheduled a non-judicial foreclosure sale regarding the Watersong Condominiums for April 5, 2011.  The foreclosure was enjoined by the filing of Watersong's chapter 11 case on April 2, 2011.

**D.    Significant Events During the Bankruptcy**

**1.    Bankruptcy Proceedings**

The following is a chronological list of significant events which have occurred in the office  of the U.S. Trustee with the aspects of his case:

a.    Watersong timely filed its schedules, statement of financial affairs, and all other items required to be filed at the outset of the case.

b.    Watersong submitted items to the Office of the United Trustee pursuant to the applicable guidelines for chapter 11 cases.

c.    Representatives of the Debtor-in-Possession, and its attorney, appeared at the required early meeting with the Office of the United States Trustee .  The United States Trustee was made aware of the background of Watersong's case.  All matters pertaining to the 7-day package and other reporting and compliance matters were dealt with.

        d.     Representatives of the Debtor-in-Possession, and its attorney, appeared at the required meeting of creditors in his case under 11 U.S.C. § 341a, and at a continued meeting of creditors.  The meeting of creditors was then concluded

        e.     The Debtor-in-Possession vigorously opposed a motion, brought on shortened notice by One West for 1) relief from the automatic stay and 2) excusing the receiver from the turnover provisions of 11 U.S.C. § 543.  The Bankruptcy Court denied the relief requested by One West, and ruled that the amounts held by the receiver in the amount approximately $300,000 should be turned over to Watersong, minus that One West could prove were actually to the receiver by One West, and were still in the account.

The Court has approved the s' employment of the following professionals:

        a.     Reeder Law Corporation, general insolvency counsel for the Debtor-In-Possession.

**2.**     **Other Legal Proceedings**

The Debtor-in-Possession has filed an adversary proceeding against One West seeking an injunction enjoining any prosecution by One West of the Action pending in the Dallas District Court entitled <u>One West, FSB vs. Barry S. Nussbaum.</u>

**4.**     **Procedures Implemented to Resolve Financial Problems**

To attempt to fix the problems that led to the bankruptcy filing, the  have implemented the following procedures:

        a.     Carefully monitoring and adjusting expenses.

        b.     Moving forward with plans to refurbish and market the Watersong Condominiums.

5.      III.

## SUMMARY OF THE PLAN OF REORGANIZATION

**A.      What Creditors and Interest Holders Will Receive Under The  Proposed Plan**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

**B.      Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has <u>not</u> placed the following claims in a class.

**1.      Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(1).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan.

| <u>Name</u> | <u>Amount Owed</u> | <u>Treatment</u> |
|---|---|---|
| Reeder Law Corporation General insolvency counsel to the Debtor-in-Possession | Approximately $100,000 minus the pre-petition retainer of $22,037, minus any additional amount allowed and paid  through interim fee applications. | Payment on later of the Effective Date or the entry of an order approving counsel's fees, unless an alternative arrangement is made between Reeder Law Corporation and the Debtor-in-Possession |
| Clerk's Office Fees | $0 - $200 | Paid in full on Effective Date. |

| Office of the U.S. Trustee Fees | Approx. $750 | Paid in full on Effective Date |
|---|---|---|
| TOTAL | Approx. $78,913 | |

**Court Approval of Fees Required:**

The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application.  Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated above, the Debtor will need to pay approximately  $78,913 of administrative claims on the Effective Date of the Plan, unless an alternative arrangement is made between Reeder Law Corporation and the Debtor-in-Possession.  As shown above, the source of this cash will be the remainder of the cash on hand at the time of the filing of this disclosure statement, the funds currently in the Reeder Law Corporation client trust account for payment to Class 4, and the s' subsequent earnings.

2.      **Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax.

The following chart lists all of the Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan:

**Class 1**

| Description | Amount Owed | Treatment |
|---|---|---|

12

| | | | |
|---|---|---|---|
| • Texas State Comptroller<br><br>Franchise Tax. | $12,500<br><br>(Disputed)<br><br>Payment terms will be 100% of the allowed claim over a period of 60 months. | • Pymt interval<br><br>• Pymt amt/interval<br><br>• Begin Date<br><br><br><br>• End Date<br><br><br><br><br><br>• Interest Rate<br><br><br><br><br><br>• Total Payout Amount %<br><br>• Discharge of Taxes | Monthly (60 payments)<br><br>$227.00 per month<br><br>On the 1st day on the second month following the month in which the Effective Date falls.<br><br>59 months after the date of the 1st payment – after the Debtors-in-Possession have made their 60th payment<br><br>Applicable Federal Rate on the month of the Effective Date (estimated at 3.5%)<br><br>100%<br><br>Upon the payment of the 60th payment provided for herein, the Federal Income Taxes for the periods stated in this Plan shall be fully discharged.<br><br>In the event that the claim is disallowed, or otherwise disposed of, then payment will |

**Class 1 is not impaired.**

**C.    Classified Claims and Interests**

   **1.    Classes of Secured Claims**

   Secured claims are claims secured by liens on property of the estate.

**Class 2**

| **Description** | **Amount Owed** | **Treatment** |
| --- | --- | --- |

| | | | |
|---|---|---|---|
| • One West Bank FSB ("One West")<br><br>1st Deed of Trust encumbering the Watersong Condominiums (the "Watersong"), 250 separately registered, titled and separately saleable condominium units with separate addresses, including 14645 Las Flores Drive, Dallas, Texas 75254, separate parcel numbers and legal descriptions. | $10,400,000 principal, plus arrearages (the "Gross One West Claim")<br><br>The current value of One West's collateral is approx. $8,100,000, which, pursuant to 11 U.S.C. § 506(a), is the amount of One West's allowed secured claim (the "One West Allowed Secured Claim").<br><br>The difference between One West's Allowed Secured Claim and the Gross One West Claim will be separately classified in Class 3a (Guaranteed Unsecured Claims) based on said claim being guaranteed by multiple guarantors | Full payment | The One West Allowed Secured Claim will be paid in full through the sales of the Watersong Condominiums, after upgrades. Upon the sale of each upgraded unit, a release amount of between $35,000 and $46,000 will be paid to One West, depending on the size of the unit.<br>Between the Effective Date and the time that One West's allowed secured claim is paid in full, One West will receive, on the 15th of each month, a payment equal to the remainder of all collected rents for the previous month regarding the Watersong Condominiums after payment of operating expenses, property management fees and asset management fees for the same period (the "Net Cash Flow Payment").<br>The One West Allowed Secured Claim will be structured as a 5-yr obligation, subject to the pay-down provisions set out hereinabove. Interest on the One West Allowed Secured Claim shall be as follows:<br>Year 1 -  2%<br>Year 2 –  3%<br>Years 3-5  4%<br>The Net Cash Flow Payments will first be applied to interest at the above-stated rates, and then will be applied to the principal balance.<br>Allowed Secured Claim. |

**Class 2 is impaired.**

**Class 3**

**3.     Classes of Unsecured Claims**

Unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).  The following chart identifies this Plan's treatment of the classes containing the Debtor-in-Possession's general unsecured claims:

**Class 3a – Guaranteed Unsecured Claims**

| Description | Amount Owed | Treatment | |
|---|---|---|---|
| The unsecured portion of the Gross One West Claim.  This claim is guaranteed by multiple guarantors:<br><br>1)  The Federal Deposit Insurance Corporation through a Loss-Sharing Agreement; and<br><br>2)  Barry S. Nussbaum, an individual<br><br>The total amount of the Class 3a claim is approx. $2,300,000.<br><br><br>One West is the sole member of Class 3a | The Claim of Class 3a (the "One West Guaranteed Unsecured Claim") is equal to the difference between the Gross One West Claim and the One West Allowed Secured Claim. This amount is estimated at $2,300,000 | Full payment | Upon the full payment of the One West Allowed Secured Claim, then the Net Cash Flow payments and the applicable Release Payments shall be paid to One West on account of the One West Guaranteed Unsecured Claim, until said claim is paid in full.  All payments of the Net Cash Flow Payment shall be applied to the principal amount of the One West Guaranteed Unsecured Claim. |
| | | • Interest Rate | Not applicable |
| | | • Total Payout Amount % | 100% |

**Class 3a is impaired**

**Class 3b – General Unsecured Claims**

17

| Description | Amount Owed | Treatment | |
|---|---|---|---|
| Allowed general unsecured claims that are not a member of Class 3a | Approximately $5,052,000 | • Payment interval<br><br>• Payment amount/interval | Members of Class 3b will receive a total of 50% of their allowed claims, as follows:<br><br>1) A payment of $50,000 will be made to Class 3b from the New Value Contribution, within 30 days of the Effective Date.  This payment will be paid to the holders of allowed Class 3b Claims on a *pro rata* basis.<br><br>2)  A payment from the sale of the Watersong Condominiums, after full payment is made to Class 3a, from the sale of each unit, until the full amount due to this class is paid.<br><br>3)  Members of class 3b whose claims are $1,000 or less will be placed in Class 3c (Administrative Convenience Class) |

**Class 3c – General Unsecured Claims – Administrative Convenience Class**

(Class 3c is not a separate class for Plan voting purposes, but is a sub-class of Class 3b)

18

| **Description** | **Amount Owed** | **Treatment** |
|---|---|---|
| The holders of general unsecured claims that would otherwise be members of Class 3b:<br><br>1)Whose claims are less than $1,000, or<br><br>2)  Whose claims are greater that $1,000, but who opt to be treated as a member of class 3c<br><br><br>Class 3c is not a separate class for Plan voting purposes, but is a sub-class of Class 3b | Unknown | Payment of 25% of the amount of each allowed claim, with a maximum payment amount of $250 for any claim in this sub-class, within 30 days of the Effective Date. |

4.      **Class(es) of Interest Holders**

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor.

**Class 4 – Holders of Partnership Interests in the Debtor-in-Possession**

| Description of Class | Treatment |
|---|---|
| All holders of partnership interests in the Debtor-in-Possession as of the date of the filing of the Debtor-in-Possession's chapter 11 case, April 2, 2011 | The members of class 5 shall contribute a total of $100,000 in new value to the Debtors-in-Possession (the "New Value Contribution"), which will be used by the Debtor-in-Possession to carry out the provisions of the Plan.<br><br>All existing partnership interests will be cancelled on the Effective Date. Those members of Class 4 who contribute to the New Value Contribution shall receive, as of the Effective Date, new partnership interests in the reorganized debtor in an amount equal to the percentage that their contribution represent to the entire New Value Contribution. |

**Class 4 is impaired.**

**D.      Means of Performing the Plan**

  **1.      Funding for the Plan**

The Plan will be funded by:

  **1) Cash in the by Debtor-in-Possession's bank account;**

As of the date of this disclosure statement, the Debtor-in-Possession has approximately $48,000 in its debtor in possession bank account. The Debtor in possession expects to receive the approximately $319,000 currently held in the receiver's account.

  **2) The Debtors-in-Possession's ongoing earnings from rents.**

The rents from on the Watersong Condominiums have averaged approximately $155,000 per month. Expenses going forward are estimated to be approximately $117,000 per month. A table showing income and expenses regarding the Watersong Condominiums is attached hereto as Exhibit "1"

3)  **A new "priming" loan, pursuant to 11 U.S.C. § 364(d), in the total amount of $500,000, for the purpose of beginning the refurbishing and upgrade of the Watersong Condominiums;**

Once this amount is approved by the Bankruptcy Court after notice and a hearing, then the loan proceeds will be used to begin the upgrade of the Watersong Condominiums for sale.

**4)  The sale, in phases, of the Watersong Condominiums;**

The upgrade process will be completed in phases.  Watersong estimates that approximately 8 units will be upgraded and sold per month, approximately 25 unites per quarter, and 100 unites per year.  Once a unit, is sold, and selling expenses and the release amounts to One West are paid, the balance of the proceeds will be used to upgrade the next phase.  This roll-out of the upgraded condominium units in phases allows Watersong to continue leasing the pre-upgrade units, and generate net rental income,  while the upgrade and sale process moves forward.  A table showing the projections regarding the upgrading and sale of the Watersong Condominiums is attached hereto as Exhibit "2".

**5)  The New Value Contribution of $100,000**

A total of $100,000 will be contributed by the members of Class 4

**2.        Post-confirmation injunction.**

Effective on the Effective Date, and continuing until the earlier of 60 months after the effective date or the date that the allowed claims of  One West in Class 2 and Class 3a are paid in full, a post-confirmation injunction shall be in effect enjoining One West, or any affiliate, agent or successor of One West, from taking any action against Barry S. Nussbaum, an individual, to enforce any guarantee of any amount owed by Watersong to One West or its predecessors in interest.

**3.        Post-confirmation Management**

Watersong will be the designated person regarding management of the Debtors-in-Possession subsequent to the confirmation of the Plan.

### 4.        Disbursing Agent

Watersong shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan.  Watersong shall serve without bond and shall receive no compensation for distribution services rendered and expenses incurred pursuant to the Plan.

**E.        Risk Factors**

The proposed Plan has the following risks:

a.    The 's revenues may be insufficient to support plan payments.

b.    The  may face health or other personal adversity with will make it impossible to earn sufficient amounts to complete the obligations imposed by the Plan.

**F.        Other Provisions of the Plan**

### 1.        Executory Contracts and Unexpired Leases

#### a.        Assumptions

Watersong will assume the property management agreement with Nussbaum, Inc. (the "Agreement") that has been in place since 2001 when Watersong acquired the Watersong Condominiums.  The indirect relationship between Watersong and Nussbaum, Inc. is set out hereinabove.

The Agreement calls for the payment to Nussbaum, Inc. of 4% of collected rents on the Watersong Condominiums as a property management fee, and 2% of collected rents on the Watersong Condominiums as an asset management fee.  Watersong contends, and will present evidence at the confirmation hearing showing, that the amount that have been, and will continue to be paid by Watersong to Nussbaum, Inc. in the Agreement are well within the normal range for similar services in the Dallas, Texas market.

#### b.        Rejections

Not applicable.

### 2.        Changes in Rates Subject to Regulatory Commission Approval

The Debtor is not subject to the jurisdiction of any governmental regulatory commission regarding his rates.

### 3.        Retention of Jurisdiction.

The Court will retain jurisdiction to the extent provided by law.

**G.    Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor.  The Plan Proponents CANNOT and DO NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences which the Plan will have on the s' tax liability: The  Debtor-in-Possession is unaware of any tax consequences that will accrue to them as a result of their confirmation of and performance under the terms of the Plan.

## IV.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The Plan Proponents CANNOT and DO NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible.  These requirements are not the only requirements for confirmation.

**A.       Who May Vote or Object**

      **1.       Who May Object to Confirmation of the Plan**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

      **2.       Who May Vote to Accept/Reject the Plan**

A creditor has a right to vote for or against the Plan if that creditor has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

        **a.       What Is an Allowed Claim/Interest**

As noted above, a creditor must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes.

A creditor may have an allowed claim even if a proof of claim was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim.  Consult Exhibits F through H to see how the Proponent has characterized your claim or interest.

        **b.       What Is an Impaired Claim/Interest**

As noted above, an allowed claim only has the right to vote if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that classes 2, 3a, 3b and 4 are impaired and that holders of claims in those classes are therefore entitled to vote to accept or reject the Plan. The Proponent believes that class 1 is unimpaired and that holders of claims in that class therefore do not have the right to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may

file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3.   Who is <u>Not</u> Entitled to Vote

The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.   Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5.   Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section {IV.A.8.}.

### 6.   Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (½) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan.  A class of interests is considered to have accepted the Plan when

at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

### 7.    Treatment of Nonaccepting Classes

As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code.  The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown."  The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 8.    Request for Confirmation Despite Nonacceptance by Impaired Class(es)

Watersong asks the  Court to confirm this Plan by cramdown on impaired classes 2, 3a, 3b, and 4 if any of such class does not vote to accept the Plan.

### B.    Liquidation Analysis

Another confirmation requirement is the "Best Interests Test", which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors

with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here for the following reasons:

1.      Class 1 is already receiving 100% of its claim pursuant to the Plan.

2.      Holders of allowed claims in Class 4 are not receiving less than they would receive in a chapter 7 liquidation.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation.

## LIQUIDATION ANALYSIS

**ASSETS VALUE AT LIQUIDATION VALUES:**

ASSETS – REAL PROPERTY

|  |  |
|---|---|
| Watersong Condominiums | $8,100,100 |
| Encumbrances: | ($10,400,000) plus arrearages |
| NET REALIZABLE EQUITY – REAL PROPERTY | $  -0- |

PERSONAL PROPERTY

|  |  |
|---|---|
| Checking Accounts | $48,000 |
| Office Equipment | $4,000 |
| Rents receivable | $,2,897 |
| Right to funds in Receiver's Account | $319,000[1] |

TOTAL PERSONAL PROPERTY                                       $373,987

TOTAL ASSETS AT LIQUIDATION VALUE                        $373,897

**Less:**

**Trustee's Fees**

$1 – 5,000 (25%)                              $1,250

$5,001-$50,000 (10%)                         $4,499

$51,001-$373,897 (5%)                        $16,138

Trustee's Fees                               $21,888

Net assets available for distribution                        $352,009

**Unpaid professional fees in chapter 11 case**

Reeder Law Corporation                       $77,673

**Total chapter 11 fees**                    $77,673

Subtotal                                                     $274,336

**Priority Tax Claims**

Texas State Comptroller                      $ 12,500

**Total Priority Tax Claims**               **$ 12,500**

**NET AVAILABLE TO UNSECURED CREDITORS**              **$261,836**

**CLASS 4 GENERAL UNSECURED CLAIMS**                  **$5,052,000**


**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CHAPTER 7 LIQUIDATION:   5.2%**


**% OF THEIR CLAIMS WHICH THE HOLDERS OF UNSECURED NON-PRIORITY CLAIMS WILL RECEIVE OR RETAIN UNDER THIS PLAN:**

**Class 3a:    100%**

**Class 3b:    25.0%**

---

[1]  This amount is subject to reduction by for amounts that One West can prove that it advanced to the receiver, and that are  still in the receiver's account.

## C.    Feasibility

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.  The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

| | |
|---|---|
| Cash Debtor will have on hand by Effective Date | $467,000 |
| **To Pay:**  Administrative Claims | ($77,963) |
| **To Pay:**  Statutory costs and charges (U.S. Trustee's fee) | ($950) |
| **To Pay:**  Other Plan Payments due on Effective Date | ($0) |
| Balance after paying these amounts (the "Net Effective Date Balance") | $389,037 |

The sources of the cash Debtor will have on hand, by the Effective Date, as shown above, are:

| | |
|---|---|
| $48,000 | Cash in DIP Account now |
| $319,000 | Funds in receiver's account |
| $367,000 | SubTotal |
| $100,000 | The New Value Contribution |
| **$467,000** | **Total Cash on hand on Effective Date** |

On the Payment Commencement Date, the  Debtor-in-Possession will be required to make the following payments from the Net Effective Date Balance of $389,037:

**Class 1** (1st of 60 monthly payments)

| | |
|---|---|
| Texas State Comptroller:: | $227.00 |
| Total due on Payment Commencement Date: | $227.00 |
| Funds Available on the Payment Commencement Date: | $389,037 |

29

Payment Commencement Date
Surplus:                                        $388,810

Notes:

   1)  The Payment Commencement Date Surplus may be reduced due to possible reduction

of funds in the receiver's account, which are to be turned over to Watersong, is subject to

reduction by for amounts that One West can prove that it advanced to the receiver, and that

are  still in the receiver's account.

   YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR

FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THIS

DISCLOSURE STATEMENT.

## V.

## EFFECT OF CONFIRMATION OF PLAN

**A.      Discharge**

   This Plan provides that upon the Effective Date, Debtor shall be discharged of liability

for payment of debts incurred before confirmation of the Plan, to the extent specified in 11

U.S.C.§ 1141.  However, the discharge will not discharge any liability imposed by the Plan.

**B.      Revesting of Property in the Debtor**

   Except as provided in Section {V.E.}, and except as provided elsewhere in the Plan,

the confirmation of the Plan revests all of the property of the estate in the Debtor.

**C.      Modification of Plan**

   The Proponent of the Plan may modify the Plan at any time before confirmation.

However, the Court may require a new disclosure statement and/or revoting on the Plan.

   The Proponent of the Plan may also seek to modify the Plan at any time after

confirmation only if (1) the Plan has not been substantially consummated <u>and</u> (2) the Court

authorizes the proposed modifications after notice and a hearing.

**D.      Post-Confirmation Status Report**

1       Within 120 days of the entry of the order confirming the Plan, Plan Proponent shall

2   file a status report with the Court explaining what progress has been made toward

3   consummation of the confirmed Plan.  The status report shall be served on the United States

4   Trustee, the twenty largest unsecured creditors, and those parties who have requested special

5   notice. Further status reports shall be filed every 120 days and served on the same entities.

**E.    Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

**F.    Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

1  Date:  July 1, 2011

2                                    _____/s/ Barry S. Nussbaum_____
                                     Manager, BNC Investments LLC,
3                                    General Partner of BNC Watersong, L.P.,
                                     General Partner of Watersong
4                                    Apartments, L.P.

5

6  Date:   July 1, 2011              REEDER LAW CORPORATION

7

8                                    _____/s/ DAVID M. REEDER___
                                     Attorneys for Watersong Apartments,
9                                    L.P., Debtor-in-Possession and Plan
                                     Proponent
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28