1

2

3  A. KENNETH HENNESAY, JR. (BAR NO. 187531)
   TED FATES (BAR NO. 227809)
4  ALLEN MATKINS LECK GAMBLE
       MALLORY & NATSIS LLP
5  1900 Main Street, Fifth Floor
   Irvine, California 92614-7321
6  Phone:  (949) 553-1313
   Fax:  (949) 553-8354
7  E-Mail:  khennesay@allenmatkins.com
            tfates@allenmatkins.com
8

9  Attorneys for Secured Creditor
   OneWest Bank, FSB
10

11            UNITED STATES BANKRUPTCY COURT

12            Southern District of California

13  In re                          Case No. 11-05632-LA11

14  WATERSONG APARTMENTS, L.P.,     Chapter 11

15         Debtor.                  **OBJECTION TO DISCLOSURE
                                    STATEMENT DESCRIBING DEBTOR IN**
16                                  **POSSESSION'S ORIGINAL CHAPTER 11
                                    PLAN OF REORGANIZATION**
17

18                                  Date:   November 3, 2011
                                    Time:   10:30 a.m.
19                                  Dept:   2, Room 118
                                            325 West "F" Street
20                                          San Diego, CA 92101-6991
                                    Judge:  Hon. Louise DeCarl Adler
21

22

23

24

25

26

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**       940071.01/OC

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT....................................... 1

II.  THE DISCLOSURE STATEMENT FAILS TO CONTAIN ADEQUATE
     INFORMATION AND CANNOT BE APPROVED........................ 5

     A.   The Disclosure Statement Fails to Include Any
          Information to Support its Promised Treatment
          of Creditors......................................... 6

     B.   The Debtor Must Fully and Fairly Disclose the
          Likelihood of Obtaining the Priming Loan............. 8

     C.   The Debtor Must Fully and Fairly Disclose
          Current Operating Results and Cash Flow
          Projections.......................................... 8

     D.   The Disclosure Statement Provides No
          Disclosure About the Non-Debtor Guarantor's
          Ability to Make the Contribution Specified in
          the Plan............................................. 8

     E.   The Debtor Provides No Disclosure as to the
          Effect of Its Proposed Piecemeal Disposition
          of OneWest's Collateral.............................. 9

III. THE DISCLOSURE STATEMENT CANNOT BE APPROVED
     BECAUSE THE PROPOSED PLAN FAILS TO COMPLY WITH
     APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND
     CANNOT BE CONFIRMED.................................... 9

     A.   The Debtor's Proposed Injunction Against
          OneWest in Favor of a Non-Debtor Guarantor Is
          Legally Impermissible................................ 11

**Page**

      1.    Bankruptcy Code Section 524(e) Expressly Prohibits a Post-Confirmation Injunction in Favor of Non-Debtors........................ 12

      2.    Controlling Ninth Circuit Authority Prohibits a Post-Confirmation Injunction on Creditor Action Against Non-Debtors......... 15

B.    The Plan Violates the Absolute Priority Rule........ 20

C.    The Plan Is Not Fair and Equitable.................. 23

D.    The Debtor's Plan Impermissibly Attempts to Separately Classify Unsecured Claims and OneWest's Deficiency Claim.......................... 26

E.    The Debtor's Plan Was Not Proposed in Good Faith............................................... 29

IV.   CONCLUSION............................................... 30

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

940071.01/OC

1

2

3 **TABLE OF AUTHORITIES**

4

5 **Cases**                                                                    **Page(s)**

6 American Hardwoods, Inc. v. Deutsche Credit Corp. (In
        re American Hardwoods, Inc.),
7       885 F.2d 621 (9th Cir. 1989)..................12, 16, 17, 19

Arnold & Baker Farms v. United States (In re Arnold &
8       Baker Farms),
        85 F.3d 1415 (9th Cir. 1996).............................26
9

Butner v. United States,
10      440 U.S. 48 (1979).......................................13

11 Commercial  Wholesalers,  Inc. v.  Investors  Commercial
        Corp.,
12      172 F.2d 800 (9th Cir. 1949).............................16

13 Crocker Nat'l Bank v. Am. Mariner Indus., Inc. (In re
        Am. Mariner Indus., Inc.)
14      734 F.2d 426 (9th Cir. 1984).............................26

15 Everett v. Perez (In re Perez),
        30 F.3d 1209 (9th Cir. 1994).............................20
16

In re Barakat,
17      99 F.3d 1520 (9th Cir. 1996).............................27

18 In re Beyond.com Corp.,
        289 B.R. 138 (Bankr. N.D. Cal. 2003).....................10
19

In re California Hancock, Inc.,
20      88 B.R. 226 (B.A.P. 9th Cir. 1988).......................25

21 In re Cardinal Congregate I,
        121 B.R. 760 (Bankr. S.D. Ohio 1990).....................10
22

In re Chateaugay Corp.,
23      89 F.3d 942 (2d Cir. 1996)...............................27

24 In re Excel Innovations, Inc.,
        502 F.3d 1086 (9th Cir. 2007)............................16
25

In re Felicity Assocs., Inc.,
26      197 B.R. 12 (Bankr. D. R.I. 1996)........................10

27 In re Ferretti,
        128 B.R. 16 (Bankr. D.N.H. 1991)..........................6
28

**Page(s)**

In re Keller,
157 B.R. 680 (Bankr. E.D. Wash. 1993)......................16

In re Linda Vista Cinemas, L.L.C.,
2011 U.S. Dist. LEXIS 52885 (D. Ariz. May 6, 2011)........19

In re Lowenschuss,
67 F.3d 1394 (9th Cir. 1995)..................11, 12, 15, 16

In re Main Street AC, Inc.,
234 B.R. 771 (Bankr. N.D. Cal. 1999)......................10

In re Metrocraft Publ'g Servs., Inc.,
39 B.R. 567 (Bankr. N.D. Ga. 1984)..........................6

In re Monarch Beach Venture, Ltd.,
166 B.R. 428 (C.D. Cal. 1993)..............................25

In re Myrvang,
232 F.3d 1116 (9th Cir. 2000).............................13

In re Pecht,
57 B.R. 137 (Bankr. E.D. Va. 1985)........................10

In re Porcelli,
319 B.R. 8 (Bankr. M.D. Fla. 2004)........................27

In re Regatta Bay,
2009 WL 5730501 (D. Ariz. 2009)...........................19

In re Rohnert Park Auto Parts, Inc.,
113 B.R. 610 (B.A.P. 9th Cir. 1990)....................19, 20

In re Texaco Inc.,
84 B.R. 893 (Bankr. S.D. N.Y. 1988).......................26

In re Unichem Corp.,
72 B.R. 95 (Bankr. N.D. Ill. 1987).........................5

Justice v. Carter,
972 F.2d 951 (8th Cir. 1992)..............................20

K.  March,  A.  Ahart  &  L.  Tchaikovsky,  California
Practice  Guide:   Bankruptcy,  § 11:682  (Rutter
Group. 2009).............................................26

Norwest Bank Worthington v. Ahlers,
485 U.S. 197 (1988)....................................13, 20

1

2

3                                                                **Page(s)**

4    R.I.D.C. Industrial Development Fund v. Snyder,
           539 F.2d 487 (5th Cir. 1976)..............................18
5
     Seaport Automotive Warehouse, Inc. v. Rohnert Park Auto
6         Parts, Inc. (In re Rohnert Park Auto Parts, Inc.),
           113 B.R. 610 (B.A.P. 9th Cir. 1990)......................16
7
     Star Phoenix Mining Co. v. West One Bank,
8          147 F.3d 1145 (9th Cir. 1998)....................15, 16, 17
9    Steelcase Inc. v. Johnston (In re Johnston),
           21 F.3d 323 (9th Cir. 1994)..........................21, 22
10
     Sun Valley Newspapers, Inc. v. Sun World Corp. (In re
11        Sun Valley Newspapers, Inc.),
           171 B.R. 71 (B.A.P. 9th Cir. 1994).......................16
12
     Union Carbide Corp. v. Newboles,
13         686 F.2d 593 (7th Cir. 1982).............................18
14   United States v. Tharp,
           973 F.2d 619 (8th Cir. 1992).............................17
15
16   **Statutes**

17   11 U.S.C. § 105...............................................20

18   11 U.S.C. § 1111(b)...........................................28

19   11 U.S.C. § 1125...............................................1

20   11 U.S.C. § 1125(a)(1).........................................6

21   11 U.S.C. § 1125(b)............................................5

22   11 U.S.C. § 1129(a)(1).............................3, 11, 13, 15

23   11 U.S.C. § 1129(a)(10).......................................4

24   11 U.S.C. § 1129(a)(3)........................................5

25   11 U.S.C. § 1129(a)(7)........................................3

26   11 U.S.C. § 1129(b)(1).......................................23

27   11 U.S.C. § 1129(b)(2).......................................20

28   11 U.S.C. § 1129(b)(2)(A).................................23, 24

1

2

3                                                                    **Page(s)**

4   11 U.S.C. § 1129(b)(2)(A)(i)....................................4

5   11 U.S.C. § 1129(b)(2)(A)(ii)..............................4, 25

6   11 U.S.C. § 1129(b)(2)(A)(iii).............................4, 25

7   11 U.S.C. § 1129(b)(2)(B)..................................4, 20

8   11 U.S.C. § 22(b)............................................18

9   11 U.S.C. § 34...............................................18

10  11 U.S.C. § 363(k)............................................4

11  11 U.S.C. § 524..............................................19

12  11 U.S.C. § 524(e)......................................passim

13  **Other Authorities**

14  1A J. Moore <u>Collier on Bankruptcy</u> ¶ 16.14
          (14th ed. 1978).......................................18
15
    Norton,  <u>Norton  Bankruptcy  Law  and  Practice  3rd</u>,
16        § 113.11, pg. 113-27.................................24

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

940071.01/OC

1

2

3      OneWest Bank, FSB ("OneWest") objects to Disclosure

4  Statement Describing Debtor in Possession's Original Chapter 11

5  Plan of Reorganization (the "Disclosure Statement") (Docket

6  No. 74), as follows:

7  **I.    PRELIMINARY STATEMENT**

8      Approval of the Disclosure Statement must be denied because

9  the Disclosure Statement fails to contain "adequate information,"

10  as required by Bankruptcy Code section 1125.  The Disclosure

11  Statement contains **none** of the information necessary for the

12  Court or parties in interest to determine whether the proposed

13  plan is anything more than a dead letter.

14      Some of the more obvious issues include:

15  • The Debtor proposes to pay creditors primarily by

16      converting 250 rental apartments (that comprise

17      OneWest's collateral) for sale as condominiums, over a

18      period of five years.  Even though the Debtor admits

19      that the current fair market value of the property is

20      only $8.1 million, the Debtor proposes to pay creditors

21      approximately $12.9 million through its plan.  The

22      Debtor, however, fails to provide **any** information to

23      support its refurbishment cost, sales price and

24      absorption assumptions;

25  • The Disclosure Statement fails to provide **any** cash flow

26      projections;

27

28

- The Disclosure Statement fails to provide **any** information about the Debtor's current operating performance.  Moreover, the Debtor has failed to file Monthly Operating Reports for June, July, August and September;

- The Disclosure Statement does not contain **any** financial information about the general partner of the Debtor and any general partner assets that may available to satisfy creditor claims;

- The Debtor's plan assumes that the Debtor will obtain a $500,000 priming loan to fund conversion of the apartment units to for-sale condos.  The Disclosure Statement, however, does not contain **any** information about that loan – is there an existing loan commitment, who is the lender, what are the terms?  Such disclosure is critical because that presumed loan is the lynchpin of the entire plan; and

- Finally, the Disclosure Statement entirely fails to provide **any** disclosure concerning the non-debtor Guarantor's ability to fund its contribution under the proposed plan.

The Disclosure Statement lacks **any** real disclosure and is clearly nothing more than a sham placeholder document.  The purpose of the Debtor's Disclosure Statement and proposed plan appears to be a bad faith attempt by the Debtor to continue the

automatic stay in this single asset real estate case and provide its principal, who is not in bankruptcy, with the protections of the automatic stay and a discharge to avoid his own liability to OneWest.

Even if these disclosure failures could be cured, the Debtor should not be allowed to go back to the drawing board with respect to its proposed plan. It is well established that a disclosure statement should not be approved when the plan described therein is unconfirmable as a matter of law. In this case, the Debtor's proposed plan can never be confirmed, because it clearly violates multiple provisions of the Bankruptcy Code and Ninth Circuit law, including:[1]

- The proposed plan violates Bankruptcy Code sections 1129(a)(1) and 524(e) and related Ninth Circuit law because the Plan proposes an unlawful injunction barring OneWest from enforcing its rights against a non-debtor guarantor, regardless of whether the Debtor actually performs under its plan;

- The proposed plan violates section 1129(a)(7) because the Plan places OneWest in a position materially worse than a hypothetical chapter 7 liquidation. The Debtor

---

[1] OneWest reserves its rights to object to the Debtor's proposed plan on any grounds, should the plan proceed to a confirmation hearing. At this time, OneWest raises only certain objections which render the Debtor's proposed plan facially unconfirmable as a matter of law.

is seeking to enjoin OneWest from enforcing its rights against a non-debtor guarantor, yet fails to disclose value that would be realized by OneWest from the guaranty if the Debtor were liquidated;

- The proposed plan violates section 1129(a)(10) because the Plan cannot be confirmed over the objection of OneWest absent impermissible gerrymandering of votes;

- The proposed plan violates section 1129(b)(2)(A)(i) by proposing to modify and extend OneWest's loan without providing for the retention of all of OneWest's liens and by failing to provide for an interest rate that satisfies the fair and equitable standard;

- The proposed plan violates sections 363(k) and 1129(b)(2)(A)(ii) by proposing to sell OneWest's collateral free and clear of OneWest's liens without providing full payment to OneWest, preserving OneWest's credit bid rights under section 363(k), or adequately protecting OneWest;

- The proposed plan violates section 1129(b)(2)(A)(iii) by proposing to strip OneWest of its collateral, piece-by-piece, without providing OneWest with the indubitable equivalent of its lien;

- The proposed plan violates section 1129(b)(2)(B), the "absolute priority" rule, by proposing to allow Interest Holders to retain interests in the Debtor and

other rights and property even though OneWest's senior claims are not first paid or provided for in full; and

- The proposed plan violates section 1129(a)(3) because the Plan was proposed in bad faith.

In sum, the Debtor's proposed Plan, which seeks to sell OneWest's collateral piecemeal over a five-year period, while proposing to pay interest at a rate of 2-5% (**less** than the prime rate for the first two years) and simultaneously enjoining OneWest from enforcing its rights against a non-debtor guarantor, does not comply with the Bankruptcy Code, and cannot be confirmed over OneWest's objections. Because OneWest does not consent to the treatment of its claim as proposed by the Debtor, the Disclosure Statement cannot be approved.

## II.    THE DISCLOSURE STATEMENT FAILS TO CONTAIN ADEQUATE INFORMATION AND CANNOT BE APPROVED

Bankruptcy Code section 1125(b) provides that acceptance or rejection of a proposed plan of reorganization may not be solicited unless the holder of a claim or interest to whom the solicitation is made is provided with the proposed plan or summary thereof "and a written disclosure statement approved, after notice and hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). To approve a disclosure statement, the Court must first determine that it contains "adequate information." In re Unichem Corp., 72 B.R. 95, 96 (Bankr. N.D. Ill. 1987).

1

2

3      "Adequate information" is information of a kind, and in

4 sufficient detail, to enable a "hypothetical investor" typical of

5 the holders of claims and interests in the case to make an

6 informed judgment about the plan.  11 U.S.C. § 1125(a)(1).  To

7 meet the adequate information standard, a disclosure statement

8 must clearly and succinctly inform creditors what they are going

9 to get, when they are going to get it, and what contingencies

10 there are to getting distributions.  In re Ferretti, 128 B.R. 16,

11 18-19 (Bankr. D.N.H. 1991).

12      A critical factor in determining the adequacy of information

13 is whether the disclosure statement includes "financial

14 information, data, valuations and/or projections relevant to the

15 creditors' decision to accept or reject the plan and to

16 demonstrate the plan's feasibility."  In re Metrocraft Publ'g

17 Servs., Inc., 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984).  In this

18 case, the Disclosure Statement fails to include any of this

19 critical information.

20 **A.    The Disclosure Statement Fails to Include Any**

21 **Information to Support its Promised Treatment of**

22 **Creditors**

23      A disclosure statement is required to include credible

24 information that supports the plan's assumptions, supported by

25 evidence of recent historical performance and projections

26 assuring creditors that they will be paid as promised.  Cardinal

27 Congregate I, 121 B.R. at 767 ("the disclosure statement should

28

1

2

3  clearly identify all assumptions made in calculating *pro forma*

4  information and should set forth those facts supporting all

5  estimates.  Information regarding the accounting and valuation

6  methods used in preparation of the Disclosure Statement's

7  financial exhibits must be included.").

8        While the Disclosure Statement is full of promises

9  concerning payment to creditors, it is totally devoid of any real

10  analysis or evidence demonstrating how these promises will be

11  fulfilled.  For example, although the central premise of the

12  proposed plan is that the Debtor is going to refurbish apartments

13  to sell as condos to payoff OneWest's loan, the Disclosure

14  Statement is silent as to the basis of the Debtor's assumptions.

15  The Disclosure Statement fails to include projections of costs to

16  complete, sale prices, and absorption rates.  The Disclosure

17  Statement fails to identify the contractor(s) to conduct the

18  refurbishment and the broker to conduct the sales.

19        This information is absolutely necessary to support the

20  Debtor's promise to pay creditors approximately $12.9 million

21  from proceeds of an asset that the Debtor admits is currently

22  worth only $8.1 million.  Without information substantiating

23  costs to refurbish, the projected sales prices, and the

24  reasonableness of the absorption period, the Court and creditors

25  are left totally in the dark about whether the Debtor can perform

26  on its promises.

27

28

1

2

3  **B.  The Debtor Must Fully and Fairly Disclose the**

4  **Likelihood of Obtaining the Priming Loan**

5  The Debtor's proposed plan assumes that the Debtor will

6  obtain a $500,000 priming loan to fund refurbishment of the

7  apartments prior to sale.  No disclosure is offered, however,

8  about the purported lender, the terms of the proposed loan, the

9  likelihood of Court approval of a priming loan where the Debtor

10 has no equity in the Property, or how OneWest will be adequately

11 protected.  The Debtor must fully disclose the likelihood of

12 obtaining the loan, the sufficiency of the loan to fulfill its

13 purpose, and how its proposed plan could possibly be feasible

14 without the loan, if not obtained or not approved.

15 **C.  The Debtor Must Fully and Fairly Disclose Current**

16 **Operating Results and Cash Flow Projections**

17 The Debtor fails to submit any historical operating results

18 or any cash flow projections in connection with the Disclosure

19 Statement.  Moreover, the Debtor has failed to file Operating

20 Reports for the months of June – September 2011.

21 **D.  The Disclosure Statement Provides No Disclosure About**

22 **the Non-Debtor Guarantor's Ability to Make the**

23 **Contribution Specified in the Plan**

24 The Disclosure Statement entirely fails to provide any

25 disclosure concerning the non-debtor guarantor's ability to make

26 the contribution required in the proposed plan.

27

28

E.   **The Debtor Provides No Disclosure as to the Effect of Its Proposed Piecemeal Disposition of OneWest's Collateral**

The proposed plan seeks to radically alter OneWest's collateral position by selling the Property, an apartment complex against which OneWest has a first priority lien, as condo units. Notwithstanding the Debtor's attempt to sell free and clear of OneWest's lien, the Debtor provides absolutely no disclosure whatsoever about what effect such partial dispositions would have on OneWest's collateral or its value.  Additionally, the Debtor will be losing monthly rental revenues during a conversion and sale process.  The Debtor provides no evidence of how it will be able to fulfill its plan obligations during this process.  The Debtor provides no evidence that OneWest will be adequately protected throughout the piecemeal disposition of its collateral. The Debtor must be required to fully disclose all risks associated with the proposed piecemeal disposition of collateral and how such disposition will affect the value of the Property and OneWest's secured position.

III. **THE DISCLOSURE STATEMENT CANNOT BE APPROVED BECAUSE THE PROPOSED PLAN FAILS TO COMPLY WITH APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND CANNOT BE CONFIRMED**

The Court may refuse to permit solicitation of a plan if, based on the proposed disclosure statement, it is determined that the proposed plan violates applicable provisions of the

Bankruptcy Code.  In re Beyond.com Corp., 289 B.R. 138, 140
(Bankr. N.D. Cal. 2003) (refusing to permit solicitation of a
plan where the proposed plan violates applicable provisions of
the Bankruptcy Code); In re Main Street AC, Inc., 234 B.R. 771,
775 (Bankr. N.D. Cal. 1999) ("It is now well accepted that a
court may disapprove of a disclosure statement, even if it
provides adequate information about a proposed plan, if the plan
could not possibly be confirmed."); In re Felicity Assocs., Inc.,
197 B.R. 12, 14 (Bankr. D. R.I. 1996) ("It has become standard
Chapter 11 practice that when an objection raises substantive
plan issues that are normally addressed at confirmation, it is
proper to consider and rule upon such issues prior to
confirmation, where the proposed plan is arguably unconfirmable
on its face. [citation omitted]"); In re Pecht, 57 B.R. 137, 139
(Bankr. E.D. Va. 1985) ("If, on the face of the plan, the plan
could not be confirmed, then the court will not subject the
estate to the expense of soliciting votes and seeking
confirmation.  Not only would allowing a nonconfirmable plan to
accompany a disclosure statement, and be summarized therein,
constitute inadequate information, it would be misleading and it
would be a needless expense to the estate."); In re Cardinal
Congregate I, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990)
(disapproval of the adequacy of a disclosure statement may be
appropriate "where it describes a plan of reorganization which is

1

2

3  <u>so fatally flawed that confirmation is impossible</u>") (emphasis

4  added).

5     Here, the Debtor's proposed plan is unconfirmable, as a

6  matter of law, for several reasons:

7  **A.**   **The Debtor's Proposed Injunction Against OneWest in**

8        **Favor of a Non-Debtor Guarantor Is Legally**

9        **Impermissible**

10     Section 1129(a)(1) permits a court to confirm a plan only if

11  the plan complies with applicable provisions of the Bankruptcy

12  Code.  11 U.S.C. § 1129(a)(1).  The Debtor's proposed plan

13  contains a broad post-confirmation injunction in favor of its

14  principal that is the equivalent of a release in direct

15  contravention of the provisions of Bankruptcy Code section 524(e)

16  and Ninth Circuit law.  11 U.S.C. § 524(e); <u>see also</u> <u>In re</u>

17  <u>Lowenschuss</u>, 67 F.3d 1394, 1402 (9th Cir. 1995).  As such, the

18  Plan cannot be confirmed.

19     The Debtor's Plan provides:

20        2.   Post-confirmation injunction

21        Effective  on  the  Effective  Date,  and
           continuing  until  the  earlier  of  60  months
22        after  the  effective  date  [sic]  or  the  date
           that  the  allowed  claims  of  OneWest  in  Class  2
23        and  Class  3a  are  paid  in  full,  a  post-
           confirmation  injunction  shall  be  in  effect
24        enjoining  OneWest,  or  any  affiliate,  agent  or
           successor  of  OneWest,  from  taking  any  action
25        against  Barry  S.  Nussbaum,  an  individual,  to
           enforce  any  guarantee  of  any  amount  owed  by
26        Watersong  to  OneWest  or  its  predecessors  in
           interest.
27
   Plan, § II.D.2.
28

1

2

3   1. <u>Bankruptcy Code Section 524(e) Expressly Prohibits</u>

4     <u>a Post-Confirmation Injunction in Favor of Non-</u>

5     <u>Debtors</u>

6  The language of Section II.D.2 of the Debtor's proposed plan

7 purports to enjoin OneWest from enforcing its rights against the

8 Debtor's principal, even though the Plan does not provide OneWest

9 with full payment of its claim in accordance with its Loan

10 Documents.  The proposed post-confirmation injunction violates

11 section 524(e) of the Code.

12  Section 524(e) of the Bankruptcy Code expressly proscribes a

13 bankruptcy court from granting post-discharge third party

14 releases and injunctions in favor of non-debtor parties.

15 Specifically, section 524(e) provides that the "discharge of a

16 debt of the debtor <u>does not affect the liability of any other</u>

17 <u>entity on, or the property of any other entity for, such debt.</u>"

18 11 U.S.C. § 524(e) (emphasis added).  The Ninth Circuit has

19 expressly held that compliance with section 524(e) is mandatory

20 and a plan that violates section 524(e) cannot be confirmed.  <u>See</u>

21 <u>In re Lowenschuss</u>, 67 F.3d 1394, 1402 (9th Cir. 1995) (citing

22 cases) ("This court has repeatedly held, without exception, that

23 § 524(e) precludes bankruptcy courts from discharging the

24 liabilities of non-debtors."); <u>American Hardwoods, Inc. v.</u>

25 <u>Deutsche Credit Corp. (In re American Hardwoods, Inc.)</u>, 885 F.2d

26 621, 624-27 (9th Cir. 1989) (holding that "the specific

27 provisions of 524 displace the court's equitable powers under

28

1

2

3   section 105" and the court could not permanently enjoin a

4   creditor's enforcement proceedings against nondebtors).  Thus,

5   under sections 524(e) and 1129(a)(1) of the Code, a bankruptcy

6   court cannot approve any plan of reorganization which affects the

7   liability of a non-debtor.

8        Not only is compliance with section 524(e) mandatory, but

9   the United States Supreme Court has admonished that, absent a

10  specific grant of authority from Congress, a bankruptcy court may

11  not exercise its equitable powers to create substantive rights

12  that do not exist under state law. Butner v. United States, 440

13  U.S. 48, 54-55 (1979).  Indeed, a court may not disregard a

14  specific Bankruptcy Code section addressing an issue and instead

15  employ its equitable powers to achieve a result not contemplated

16  by the Bankruptcy Code.  In re Myrvang, 232 F.3d 1116, 1124-25

17  (9th Cir. 2000) ("whatever equitable powers remain in bankruptcy

18  courts must and can only be exercised within the confines of the

19  Bankruptcy Code") (quoting Norwest Bank Worthington v. Ahlers,

20  485 U.S. 197, 206 (1988)).  As a result, in accordance with

21  section 1129(a)(1) of the Code, a bankruptcy court may not

22  confirm a plan which "affects" the liability of any other entity

23  in contravention of section 524(e) of the Code.

24       Here, the Debtor's proposed plan unquestionably affects

25  OneWest's rights against a non-debtor in violation of

26  section 524(e).  If confirmed, the Debtor's proposed plan would

27  deprive OneWest of its right to enforce its separate contract and

28

1

2

3  legal rights against the non-debtor guarantor.  Moreover, given

4  that the Debtor only proposes to pay OneWest interest at the rate

5  of 2-4% (less than the prime rate for the first two years and

6  less than the rate provided under the Loan Documents, in any

7  event), OneWest would be deprived of its right to collect from

8  the non-debtor guarantor all other interest and other charges

9  accruing under the Loan Documents.  Finally, as a result of the

10 Debtor's prepetition defaults, OneWest filed an action against

11 the non-debtor guarantor prior to the Debtor's bankruptcy filing.

12 If confirmed, the Plan would enjoin this pending litigation.

13 Given the foregoing, the Plan clearly seeks to "affect" OneWest's

14 rights against the non-debtor Guarantors and must fail under the

15 plain language of section 524(e).

16     Although the Debtor will likely argue that the proposed

17 injunctive relief is allowable because it is purportedly

18 "temporary," this argument runs afoul of the express language of

19 section 524(e) itself, which provides that a discharge of the

20 debtor does not "affect the liability" of a non-debtor.[2]  A post-

21 confirmation injunction barring collection efforts against non-

22 debtor parties and enjoining prosecution of a pending lawsuit,

23 even one that is "temporary," clearly "affects the liability" of

24 the non-debtor party.  Moreover, the injunction in the Debtor's

25

26

_____

27

28 [2]  It is also important to note that the Debtor's proposed
    injunction would discharge the non-debtor guarantor of his
    contractual debt service obligations.

proposed plan, which continues for years regardless of whether OneWest is ever actually paid anything under the plan, operates as a de facto discharge in favor of a non-debtor.  Given the foregoing, the injunction undeniably affects the liability of the non-debtor guarantor, who would be shielded from enforcement, but would be free to use, transfer, sell, or otherwise dissipate assets, incur additional debt, and engage in preferential treatment of their other creditors, leaving OneWest with no means to protect itself against these inequities.  Accordingly, the proposed injunction violates the Bankruptcy Code sections 524(e) and 1129(a)(1).

> 2. Controlling Ninth Circuit Authority Prohibits a Post-Confirmation Injunction on Creditor Action Against Non-Debtors

Based on the plain language of section 524(e), Ninth Circuit authority also prohibits post-confirmation injunctions on creditor action against non-debtor third parties.  See In re Lowenschuss, 67 F.3d at 1401; Star Phoenix Mining Co. v. West One Bank, 147 F.3d 1145, 1147 n.2 (9th Cir. 1998) ("It is also well-established that the discharge of the principal debtor in bankruptcy will not discharge the liabilities of co-debtors or guarantors. [citations omitted].  This court has held that, under Section 524(e), a bankruptcy court does not have the power to discharge the liabilities of a bankrupt's guarantor. . . .").  Moreover, the Ninth Circuit Court of Appeals has expressly stated

that **the "maximum injunctive relief" a bankruptcy court can grant as to actions against non-debtors is "a stay until confirmation of a reorganization plan."** In re Excel Innovations, Inc., 502 F.3d 1086, 1095 (9th Cir. 2007) (emphasis added).

In Lowenschuss, the Ninth Circuit affirmed the District Court's decision vacating a global release provision that attempted to discharge the liabilities of non-debtors as contrary to section 524(e), stating:

> This court has repeatedly held, *without exception*, that § 524(e) precludes bankruptcy courts from discharging the liabilities of non debtors. American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.), 885 F.2d 621, 626 (9th Cir. 1989); Underhill v. Royal, 769 F.2d 1426, 1432 (9th Cir. 1985); Commercial Wholesalers, Inc. v. Investors Commercial Corp., 172 F.2d 800, 801 (9th Cir. 1949); see also Sun Valley Newspapers, Inc. v. Sun World Corp. (In re Sun Valley Newspapers, Inc.), 171 B.R. 71, 77 (B.A.P. 9th Cir. 1994) (holding reorganization plans which proposed to release non-debtor guarantors violated § 524(e) and were therefore unconfirmable); Seaport Automotive Warehouse, Inc. v. Rohnert Park Auto Parts, Inc. (In re Rohnert Park Auto Parts, Inc.), 113 B.R. 610, 614-17 (B.A.P. 9th Cir. 1990) (Finding that a reorganization plan provision which enjoined creditors from proceeding against co-debtors violated § 524(e)); In re Keller, 157 B.R. 680, 686-87 (Bankr. E.D. Wash. 1993) (refusing to confirm a reorganization plan that compelled a creditor to release liens against a non-debtor's property).

In re Lowenschuss, 67 F.3d at 1401-02 (emphasis added).

In Star Phoenix Mining Co. v. West One Bank, the Ninth Circuit again rejected attempts to enjoin a creditor from

1

2

3    executing its state court judgments against non-debtor guarantors

4    based upon confirmation of a liquidating plan of reorganization.

5    Id. at 1147 ("[t]his court has held that, under Section 524(e), a

6    bankruptcy court does not have the power to discharge the

7    liabilities of a bankrupt's guarantor").

8              [A]s the district court pointed out, the
               Eighth Circuit reached the same conclusion in
9              a similar case.  In United States v. Tharp,
               973 F.2d 619 (8th Cir. 1992), Tharp Brothers,
10             Inc. ("Tharp Brothers") obtained a loan from
               the Small Business Administration ("SBA") and
11             secured the loan with a mortgage and a
               security agreement.  The owners of Tharp
12             Brothers also executed a personal guaranty
               agreement.  Tharp Brothers later filed a
13             Chapter 11 bankruptcy petition and a
               Chapter 11 Plan of Liquidation.  Pursuant to
14             the plan, the mortgaged collateral was sold
               and the warranty deed stated that the
15             property was being conveyed in consideration
               of the extinguishment of all debt Tharp
16             Brothers owed to SBA.  SBA then sought
               payment of the remaining debt from the
17             guarantors, asserting they remained
               personally liable under the guaranty
18             agreements.  The Eighth Circuit affirmed the
               district court's decision and held that:
19             "[T]he discharge of [Tharp Brothers] in
               bankruptcy in no way relieved the Tharps of
20             their obligations under the guaranty
               agreements."  Id. at 622.
21
       Id. at 1148.
22
            Likewise, in American Hardwoods, Inc. v. Deutsche Credit
23
       Corp. (In re American Hardwoods, Inc.) , the Ninth Circuit held
24
       that a bankruptcy court lacked jurisdiction and power to enjoin a
25
       creditor from enforcing a state court judgment against non-debtor
26
       guarantors of a chapter 11 debtor.
27
               Deutsche argues that the permanent injunction
28             sought by American would in effect discharge

the Keelers of their liability – a result specifically proscribed by 11 U.S.C. § 524(e). Section 524(e) states that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." As we succinctly explained in Underhill v. Royal, 769 F.2d 1426 (9th Cir. 1985):

Generally, discharge of the principal debtor in bankruptcy will not discharge the liabilities of codebtors or guarantors . . . . [Section 524(e)] of the 1978 Bankruptcy Reform Act was a reenactment of Section 16 of the 1898 Act which provided that "[t]he liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt." Act of July 1, 1898, ch. 541, § 16, 30 Stat. 550 (formerly codified at 11 U.S.C. § 34 (1976)).

In addition, the Bankruptcy Act of 1898, as amended, provided that a corporation's discharge in bankruptcy "shall not release its officers, the members of its board of directors or trustees or of other similar controlling bodies, or its stockholders or members, as such, from any liability under the laws of a State or of the United States." Act of June 22, 1938, ch. 575, § 4(b), 52 Stat. 845 (formerly codified at 11 U.S.C. § 22(b) (1976)). Thus, under the old Act, stockholders or directors could remain liable for substantive violations despite discharge of the corporate entity. 1A J. Moore Collier on Bankruptcy ¶ 16.14, at 1551 (14th ed. 1978).

Id. at 1432; see also id. ("The bankruptcy court 'has no power to discharge the liabilities of a bankrupt's guarantor.' "), quoting Union Carbide Corp. v. Newboles, 686 F.2d 593, 595 (7th Cir. 1982); id. (" 'The bankruptcy court can affect only the relationships of debtors and creditor. It has no power to affect the obligations of guarantors.' "), quoting R.I.D.C. Industrial Development Fund v. Snyder, 539 F.2d 487, 490 n. 3 (5th Cir. 1976), cert. denied, 429 U.S.

1095, 97 S.Ct. 1112, 51 L.Ed.2d 542 (1977).
Section 524(e), therefore, limits the court's
equitable power under section 105 to order
the discharge of the liabilities of
nondebtors, such as the Keelers.

\*            \*            \*

We hold that the district court did not err
in concluding that it lacked power to enjoin
Deutsche permanently from enforcing its state
court judgment against the Keelers.

In re American Hardwoods, Inc., 885 F.2d at 625-26.

Similarly, and on facts very like the ones present here, the Ninth Circuit Bankruptcy Appellate Panel in In re Rohnert Park Auto Parts, Inc., 113 B.R. 610, 615 (B.A.P. 9th Cir. 1990), held that the bankruptcy court abused its discretion in confirming a plan that temporarily enjoined creditors from pursuing non-debtor co-obligors for five years until completion of the plan. Id.; see also In re Regatta Bay, 2009 WL 5730501 (D. Ariz. 2009) (District Court reversed the bankruptcy court's approval of a temporary injunction protecting non-debtors until full consummation of the plan).[3]

In Rohnert Park, the Court held that an injunction staying action against co-debtor guarantors until completion of the debtor's five year plan affects the liability of such co-debtors and violates section 524. See In re Rohnert, 113 B.R. at 616. The Court further concluded that, because the bankruptcy court's

---

[3]  The question of a post-confirmation temporary injunction is presently on appeal. See In re Linda Vista Cinemas, L.L.C., 2011 U.S. Dist. LEXIS 52885 (D. Ariz. May 6, 2011).

power under section 105 is limited by more specific provisions of the Code, like section 524(e), the bankruptcy court did not have authority to confirm a plan containing such an injunction. Id. at 617.

Given the foregoing authority, OneWest submits that the Debtor's proposed post-confirmation injunction cannot be approved under controlling Ninth Circuit law.

**B.    The Plan Violates the Absolute Priority Rule**

Under the absolute priority rule, no junior class can be receive any distributions unless senior classes receive property of a value as of the effective date equal to the allowed amount of such claim.    See 11 U.S.C. section 1129(b)(2)(B).    Claims of equity holders are always junior to claims of both secured and unsecured creditors.    See Everett v. Perez (In re Perez), 30 F.3d 1209, 1212-13 (9th Cir. 1994); see also Justice v. Carter, 972 F.2d 951, 954 (8th Cir. 1992) (finding that the absolute priority rule "provides that unsecured creditors have absolute priority over any junior equity interest to receive all money or property distributed, until the unsecured creditors are paid in full under the reorganization plan").[4]    Here, the Debtor's proposed plan violates absolute priority under the Ninth Circuit's ruling in

---

[4] Any interest retained under a plan of reorganization is considered "property" for purposes of Bankruptcy Code section 1129(b)(2).    Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 207-08 (1988).

1

2

3  <u>Steelcase Inc. v. Johnston (In re Johnston)</u>, 21 F.3d 323, 330

4  (9th Cir. 1994).

5      In <u>Johnston</u>, a debtor confirmed a plan of reorganization

6  which allowed him to retain certain property and pay himself up

7  to $50,000 in living expenses from estate assets even though not

8  all creditors would receive payment in full on the effective

9  date. <u>Johnston</u>, 21 F.3d at 329. One of the debtor's creditors

10 appealed the bankruptcy court's order confirming the plan arguing

11 that the plan violated the absolute priority rule because the

12 debtor retained its property even though the creditor did not

13 receive full payment upon confirmation. Significantly, while the

14 creditor appealed the absolute priority issue, the creditor

15 failed to appeal the bankruptcy court's determination that the

16 plan was feasible. <u>Id.</u>

17     In analyzing the absolute priority rule, the Ninth Circuit

18 adopted a simple, rigid standard. It stated:

19          before the holder of a junior claim, which,
           of course, must include the debtor itself,
20         can receive or retain property of the estate,
           a bankruptcy court must be satisfied that
21         each unsecured senior claimant actually <u>will</u>
           <u>receive full present payment</u>, or <u>its</u>
22         equivalent, under the plan of reorganization.

23 <u>Id.</u> at 331(emphasis added). The Ninth Circuit further held that

24 while full payment upon confirmation is not necessary to satisfy

25 the absolute priority rule, full future payment must be

26 "established by <u>uncontested findings</u> of the bankruptcy court

27 which are not clearly erroneous, and which 'provide for' such

28

1

2

3  payments in accordance with the feasible confirmed plan." _Id._ at

4  330 (emphasis added).   The Ninth Circuit made clear that its

5  ruling was limited to the unique facts of the case before it (and

6  that absent such unique facts it would have to find that the plan

7  violated absolute priority):

> Here, the bankruptcy court's uncontested
> findings that all claims will be paid in full
> plus interest; that the value of Johnston's
> assets substantially exceeds the amount of
> Johnston's liabilities; that Johnston is more
> likely than not to perform his plan
> obligations; and that the plan is feasible;
> ensuring that unsecured creditors of the
> estate will be paid in full with interest,
> assures that the requirements of the absolute
> priority rule are met. <u>Absent such findings,
> which, as we stated, are here tantamount to
> actual payment, we could not hold that senior
> class members were "provided for" by the
> Johnston plan</u>. Hence, we hold that the §
> 1129(b)(2)(B) requirement of absolute
> priority has been satisfied, and has not been
> violated by permitting Johnston under the
> plan to retain rights in the estate property.

18  _Id._ at 331 (emphasis added).   Given the foregoing, under Ninth

19  Circuit law, the absolute priority rule requires a debtor to make

20  full actual payments to all senior classes upon confirmation

21  unless "uncontested findings" by the bankruptcy court establish

22  that creditors will be paid in full under the plan.

23       Here, the Debtor's proposed plan cannot be confirmed under

24  _Johnston_.   The Debtor admits that it has no equity in the

25  Property.   Moreover, the Debtor's plan does not propose to pay

26  OneWest in full on the effective date.   Rather, the Debtor

27  proposes to pay OneWest something less than what it is owed over

28

a period of five years.  Thus, the Debtor cannot obtain uncontested findings that full payment to OneWest will be made. As such, because the Debtor's proposed plan would allow Interest Holders to receive distributions without actual full payment to OneWest on the effective date, the Debtor's proposed plan violates the absolute priority rule and cannot be confirmed as a matter of law.

**C.    The Plan Is Not Fair and Equitable**

The Debtor's proposed treatment of OneWest, which OneWest does not consent to, does not comply with the cramdown provisions applicable to secured creditors under section 1129(b)(2)(A) of the Bankruptcy Code as a matter of law.  Specifically, under section 1129(b)(2)(A), a debtor can only confirm a plan over the objection of a secured creditor where the plan is "fair and equitable."  11 U.S.C. § 1129(b)(1).  In order to be "fair and equitable" as to a secured creditor, the plan must provide one of the following treatments:

> (i) (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
>
> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
>
> (ii) for the sale, <u>subject to section 363(k)</u> of this title, of any property that is

> subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or
>
> (iii)   for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. § 1129(b)(2)(A) (emphasis added).

Simply stated, in order to confirm a plan over the objection of a secured creditor, the plan must at least provide one of the following:

> (i) the retention of liens and receipt of payments equal to the value of the creditor's interest in property of the estate;
>
> (ii) liens on the proceeds of sale of the collateral and receipt of payment equal to the value of such proceeds; or
>
> (iii)   realization by the holders of secured claims of the "indubitable equivalent" of their claims.

Norton, <u>Norton Bankruptcy Law and Practice 3rd</u>, § 113.11, pgs. 113-27.

The Debtor fails to comply with any of the "fair and equitable" tests under section 1129(b)(2)(A).   Specifically, the proposed Plan fails to comply with section 1129(b)(2)(A)(i) because it does not provide for OneWest to retain its entire lien, but rather provides for the piecemeal sale of OneWest's collateral free and clear of OneWest's liens.   Because the Plan does not allow OneWest to retain its lien on all its collateral, the proposed Plan fails to comply with section 1129(b)(2)(A)(i), as a matter of law.

1

2

3      In addition, the Debtor's proposed interest rate does not

4  comply with section 1129(b)(2)(A).  The Debtor proposes an

5  interest rate of only 2-4% during the plan term, less than the

6  prime rate for at least the first two years despite the

7  substantial additional risks to OneWest.  The Plan does not

8  comply with the fair and equitable standard.

9      The proposed Plan fails to comply with

10  section 1129(b)(2)(A)(ii) because it denies OneWest its credit

11  bid rights and also strips OneWest's lien from parcels sold.  See

12  In re Monarch Beach Venture, Ltd., 166 B.R. 428 (C.D. Cal. 1993)

13  (right to credit bid cannot be taken away); In re California

14  Hancock, Inc., 88 B.R. 226, 228-31 (B.A.P. 9th Cir. 1988).[5]

15      Finally, the proposed Plan fails to comply with

16  section 1129(b)(2)(A)(iii) because its seeks to strip OneWest of

17  a portion of its collateral without providing the indubitable

18  equivalent thereof.  Clearly, the diminution of collateral

19  without replacement cannot, as a matter of law, constitute

20

21

22

23

24

25

26

27

28
[5] If OneWest's credit bid rights were preserved, there would be
    no proceeds of sale available to Debtor (without OneWest's
    consent), and the Plan would not be feasible.

1

2

3  "indubitable equivalence."[6]  Given that the proposed Plan does not

4  comply with section 1129(b)(2)(A), the Plan cannot be confirmed

5  over OneWest's objection as a matter of law.

6      **D.**   **The Debtor's Plan Impermissibly Attempts to Separately**

7          **Classify Unsecured Claims and OneWest's Deficiency**

8          **Claim**

9      The Debtor's Plan attempts to create three separate classes

10  of unsecured claims, consisting of OneWest's under-secured

11  deficiency claim (Class 3a), general unsecured creditors

12  (Class 3b), and a convenience class (Class 3c).  See Debtor's

13  proposed plan, Docket No. 70, at pp. 10-12.   These separate

14  classifications violate the Bankruptcy Code.

15      Proper classification of claims and interests is a critical

16  requirement of a proper plan of reorganization. See In re Texaco

17  Inc., 84 B.R. 893, 905 (Bankr. S.D. N.Y. 1988); K. March, A.

18  Ahart & L. Tchaikovsky, California Practice Guide:  Bankruptcy,

19  § 11:682, at p. 11-76 (Rutter Group. 2009) (a plan that

20

21

---

22  [6]  The Ninth Circuit has recognized two components of indubitable
23  equivalency: it must both "compensate for present value" and
   "insure the safety of the principal."  Crocker Nat'l Bank v.
   Am. Mariner Indus., Inc. (In re Am. Mariner Indus., Inc.), 734
24  F.2d 426, 433 (9th Cir. 1984) (abrogated on other grounds).
   "To the extent a debtor seeks to alter the collateral securing
25  a creditor's loan, providing the 'indubitable equivalent'
   requires the substitute collateral not increase the creditor's
26  risk exposure."  Arnold & Baker Farms v. United States (In re
   Arnold & Baker Farms), 85 F.3d 1415, 1422 (9th Cir. 1996).
27  Clearly, proposing to sell part of OneWest's collateral does
   not "insure the safety of the principal" and increases
28  OneWest's risk exposure as condos are sold.  Thus, such a plan
   cannot be approved over OneWest's objection.

incorrectly classifies claims may not be confirmed or approved by the Bankruptcy Court).  Separately classifying similar claims or otherwise gerrymandering classes to create a class that will accept the plan violates Bankruptcy Code section 1122.  In re Barakat, 99 F.3d 1520, 1525 (9th Cir. 1996) ("[T]hou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan.").  The manipulation of classes of claims in order to artificially create an accepting claim of impaired creditors is not permitted.  In re Chateaugay Corp., 89 F.3d 942, 949 (2d Cir. 1996).  "If the classifications are designed to manipulate class voting . . . the plan cannot be confirmed. [internal citations omitted]  The separate classification of similarly situated claims violates section 1122 and is deemed to be improper separation of claims to manipulate voting."  In re Porcelli, 319 B.R. 8, 10 (Bankr. M.D. Fla. 2004); In re Chateaugay Corp., 89 F.3d at 949 (similar claims may be classified separately only for a legitimate reason; to warrant separate classification of similar claims, the debtor must advance a legitimate reason supported by credible proof); In re Barakat, 99 F.3d at 1526 (separate classification improper where debtor failed to provide business or economic justification for the classification); In re Porcelli, 319 B.R. at 10 ("The proponent of the plan must demonstrate a justification for its classification scheme and that the classification is not

1

2

3  motivated by the purpose of gerrymandering an affirmative vote of

4  an impaired class.").

5      The Debtor's proposed classification scheme, which

6  classifies OneWest's undersecured deficiency claim separately

7  from other unsecured creditors is legally impermissible.  The

8  Debtor admits that the present value of the Property is

9  $8.1 million.  As such, under section 506 of the Code, OneWest

10  holds an unsecured claim of more than $2.3 million and a secured

11  claim of $8.1 million.  Moreover, in accordance with

12  section 1111(b) of the Code, OneWest's undersecured deficiency

13  claim is deemed to constitute a recourse claim notwithstanding

14  any limitations under California law.  Thus, by operation of

15  bankruptcy law, OneWest has two allowed claims in the instant

16  bankruptcy case: (i) its secured claim based on its a first

17  priority lien against the Project in the approximate amount of

18  $8.1 million; and (ii) its undersecured general unsecured

19  deficiency claim of more than $2.3 million.

20      As the Ninth Circuit held in Barakat, a secured lender's

21  deficiency claim should not be separately classified from other

22  unsecured claims.  Accordingly, the Debtor's proposed

23  classification scheme is improper as a matter of law.

24      The Debtor's proposed treatment also seeks to deprive

25  OneWest the right to elect between having an unsecured claim, as

26  provided by bankruptcy law, or to elect to treat its entire claim

27  as secured in accordance with section 1111(b) of the Bankruptcy

28

1

2

3   Code.  Given that Congress granted this right to a secured

4   creditor, the Debtor cannot propose treatment in its Plan that

5   deprives OneWest of such right.

6   **E.    The Debtor's Plan Was Not Proposed in Good Faith**

7       The Debtor's conduct in this case and the content of its

8   proposed plan demonstrate that the plan was not proposed in good

9   faith.  The Debtor has failed to take appropriate action to

10   advance this case toward a legitimate reorganization.  The Debtor

11   hurriedly filed the plan on the deadline set by section

12   362(d)(3), solely to avoid stay relief.  In the months since

13   filing the plan, the Debtor has done nothing to cure obvious

14   deficiencies.  The Debtor has not filed any motion for approval

15   of financing, which the plan makes clear is a necessary precursor

16   to confirmation.  The Debtor has not engaged a broker to conduct

17   the proposed condo sales.  The Debtor has failed to file monthly

18   operating reports timely.  The Debtor has failed to seek Court

19   approval to use cash collateral, even though OneWest has not

20   consented to such use.  Finally, the Debtor filed an utterly

21   deficient Disclosure Statement and unconfirmable plan.

22       The Debtor's Plan is not about conferring a benefit on the

23   Debtor, but rather is designed, in bad faith, to benefit a non-

24   debtor party.  Indeed, the only thing of substance that the

25   Debtor has pursued in this case is the injunction action for the

26   benefit of its principal.  As a result of the Debtor's lack of

27

28

1

2

3    good faith, the Court should deny approval of the Disclosure

4    Statement.

5    **IV.   <u>CONCLUSION</u>**

6        Based on the foregoing, OneWest respectfully requests the

7    Court to deny approval of the Debtor's Disclosure Statement.

8
     Dated:  October 13, 2011         ALLEN MATKINS LECK GAMBLE
9                                       MALLORY & NATSIS LLP
                                      A. KENNETH HENNESAY, JR.
10                                    TED FATES

11                                    By: _*/s/ A. KENNETH HENNESAY, JR.*_
                                         A. KENNETH HENNESAY, JR.
12                                       Attorneys for Creditor
                                         OneWest Bank, FSB
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28